490

## CITY ICE DELIVERY CO. v. UNITED STATES.

### Civ. No. 591.

United States District Court
W. D. North Carolina, Charlotte Division.

Dec. 28, 1948.

Cochran, McCleneghan, Lassiter & Miller, of Charlotte, N. C., for plaintiff.

Robert R. Reynolds, Jr., U. S. Atty., Tax Division Dept. of Justice, of Washington, D. C., and T. A. Uzzell, Jr., U. S. Atty. for the Western Dist., of Asheville, N. C., for defendant.

GILLIAM, District Judge.

This action came on for trial in Charlotte, North Carolina, on October 13, 1948, without a jury, upon stipulated facts, oral testimony and documentary evidence; after

arguments of counsel, both orally and on briefs, the Court finds these facts:

1. Plaintiff is a corporation organized under the laws of North Carolina with its principal office and place of business in Charlotte, North Carolina. It was organized on February 1, 1928 by Southern Ice & Coal Company, Standard Ice & Fuel Company, Avant Fuel & Ice Company, and Wiggins Ice & Fuel Company, all of Charlotte, North Carolina, for the purpose of setting up plaintiff as the common delivering agency and retailer for the ice produced by these four ice manufacturers. These companies became owners of the stock in plaintiff on a percentage basis as follows: Southern Ice & Coal Company—46 percent Standard Ice & Fuel Company—40 percent Avant Fuel & Ice Company— 8 percent Wiggins Ice & Fuel Company— 6 percent

2. Each of these four organizers and stockholders of plaintiff entered into a contract with the plaintiff covering the period of February 1, 1928 to January 31, 1937, by the terms of which each agreed to manufacture and sell, and the plaintiff agreed to buy at a specified price a certain percentage of the total requirements of the plaintiff as the selling agent and retailer for such four stockholders; and the manufacturers agreed that they would employ the plaintiff as their sole selling agent for all ice they manufactured except that delivered by them otherwise than in competition with the plaintiff. These contracts between plaintiff and the four manufacturers specified the respective quantities of ice to be furnished to the plaintiff by each of them on a percentage basis, using as a measure for determining the percentage of each the production capacity and selling volume enjoyed by each of the four manufacturers prior to and on the date when plaintiff corporation was organized.

3. The contract with Wiggins Company was by mutual consent renewed through January 31, 1938, and subsequently through March 14, 1938. On December 23, 1937, plaintiff gave to Wiggins Company an option either to continue operation under the above-mentioned contract or to discontinue the manufacture of ice and to receive from plaintiff $2 per ton on six percent of ice tonnage based upon 35,000 tons; this option specified that the payment of $2 per ton was based on anticipated earnings of plaintiff of $3.60 per ton or less, and further provided that if plaintiff should earn as much as $4 per ton Wiggins Company would be entitled to receive $2.25 per ton for six percent of the total tonnage sold by the plaintiff.

4. The reason for the granting of the above option was that the other three manufacturers of ice were producing a surplus and it was believed that the platform of Wiggins Company could be operated and ice delivered from the other three plants to this platform cheaper than it could be procured from the Wiggins Company as a manufacturer.

On March 14, 1938, the Wiggins Company, having elected to exercise the option, executed a paper writing confirming such election and payments were made to the Wiggins Company during the years in question here on the basis of the March 14, 1938 paper writing.

This paper writing was signed by Mr. Henry M. Davega, who was on March 14, 1938 the manager of the plaintiff and in charge of its general operations. During the remainder of plaintiff's taxable year ended January 31, 1939, and for the fiscal years ended January 31, 1940 and 1941, the Wiggins Company refrained from manufacturing ice for sale to or in competition with plaintiff, and also made available to plaintiff at its expense its selling platform, and thereby plaintiff acquired the use of such platform, the use of the Wiggins name in connection with its sale from such platform, and the opportunity to sell ice to the Wiggins customers.

5. The agreements set forth in the paper writing of March 14, 1938, wherein is set forth the terms of the option exercised by the Wiggins Company was renewed for successive years and payments made by plaintiff to Wiggins Company thereunder totaled $3,730.84 for plaintiff's taxable year ended January 31, 1939, $3,897.44 for the taxable year ended January 31, 1940, and $3,252.22 for the taxable year ended January 31, 1941.

6. During the taxable years involved the plaintiff pursued the policy of lending to customers or prospective customers certain ice boxes and other types of refrigerating equipment as a business-getting practice to encourage such customers to purchase ice and ice equipment from plaintiff. During these years the plaintiff's agents kept records of the items so loaned. ·

7. As of January 31, 1938, the plaintiff owned equipment of the above nature of a value at cost of $1,767.38, which during or shortly prior to the taxable year ended January 31, 1939 was loaned to customers in accord with the above policy. The plaintiff decided, rather than to repossess this equipment and risk alienating the customers, to abandon title to such equipment and donate it to the customers. This was done during the taxable year ended January 31, 1939, and the customers were notified; accordingly, the plaintiff deducted the sum of $1,767.38, representing the cost value of the equipment in computing its net income for the taxable year ended January 31, 1939.

8. During the taxable year ended January 31, 1940, under the above policy plaintiff delivered to certain customers refrigerating equipment of cost value of $814.63, and during such year donated this equipment to such customers. · Accordingly, in computing its net income for the taxable year ended January 31, 1940, the plaintiff deducted this sum, representing cost value of the donated equipment.

9. During the taxable year ended January 31, 1941, the plaintiff likewise delivered and donated to its customers equipment of a value at cost of $611.89, and deducted this amount in computing its taxable net income.

10. No evidence of the age of the several items of equipment involved or their condition at the time when they were donated to purchasers, and no evidence of whether or not a prior loss had been claimed thereon because of write-downs in value of such equipment was offered.

11. During the taxable years in question, and prior thereto, the plaintiff regularly employed the practice of keeping a fiscal inventory record of each item of equipment purchased, and at the close of each fiscal year each item was separately appraised and valued by its officers or employees at cost or market, whichever was the lower.

12. During the taxable year ended January 31, 1939, items of inventory were inspected and re-valued, and this re-valuation resulted in a claimed loss deduction, taken on plaintiff's income tax return, in the amount of $783.98. .

13. During the taxable year ended January 31, 1940, the plaintiff's. re-valuation of inventory resulted in a claimed loss deduction of $364.21, and this amount was taken by plaintiff on its income tax return for that year.

14. The record fails to show affirmatively that the equipment as to which diminution in inventory values is claimed as deductions was held by plaintiff for sale, but for loan or donation to customers; though there are references to the fact that equipment of that character had been sold under contract and in some instances repossessed. ·

15. No evidence of the dates when such items of equipment were purchased, or of its cost or of its nature, type or construction or condition at the time of the write-down was offered. .

16. The payments referred to in Finding No. 5 were not beneficial to the plaintiff as they resulted in the payment by the plaintiff of $2 more per ton for 6 percent of its requirements than it had to pay therefor under the original contract, and also $2 more per ton than it had to pay for the remaining 94 percent of its requirements. .

17. These payments were beneficial only to plaintiff's shareholders, who benefited directly therefrom. Wiggins received $2 per ton on 6 percent of plaintiff's requirements without having to do anything to earn the money, and the other shareholders benefited in that they were permitted to produce and sell to the plaintiff at the established price their respective percentages of the 6 percent which was formerly manufactured by Wiggins.

18. The payments to Wiggins were not made to eliminate competition.

19. The payments were not ordinary expenses of a business of the type in which the plaintiff was engaged during the years in question.

20. The payments were not necessary expenses in the conduct of the plaintiff's business.

21. The plaintiff has not established that it is entitled to a refund of any income or declared value excess profits taxes it paid for the fiscal years ended January 31, 1939, 1940 and 1941.

### Conclusions of Law.

1. The Court has jurisdiction of the parties and the subject matter of this action.

2. The determination of the Commissioner of Internal Revenue is presumed to be correct, and the burden is on the taxpayer to prove otherwise.

3. The plaintiff has not carried the burden of showing that the determination of the Commissioner of Internal Revenue in respect to its tax liabilities for the years in question was erroneous in any respect.

4. Payments to be deductible as expenses of a business in Section 23(a) of the Revenue Act of 1938 and Section 23(a) (1) (A) of the Internal Revenue Code, 26 U.S.C.A. § 23(a) (1) (A), must be both ordinary and necessary expenses of the business in which the taxpayer claiming the deduction is engaged.

5. The plaintiff is not entitled to deductions as ordinary and necessary expenses under Section 23(a) of the Revenue Act of 1938 and Section 23(a) (1) (A) of the Internal Revenue Code of amounts paid to Wiggins during the fiscal years ended January 31, 1939, 1940 and 1941.

6. The paper writing of March 14, 1938, and the dealings between the parties thereunder constituted a binding contract between said parties for the years involved in this action. This contract was not in violation of the laws of the State of North Carolina, but if it were the question is immaterial to the determination of the issue herein. The plaintiff has not sustained the burden of proof to maintain its contention that the payments were made to eliminate competition; therefore, the same are not subject to depreciation deductions as provided by the Internal Revenue Code, Section 23(l) (1). Furthermore, the plaintiff has not brought itself within the provisions of the Internal Revenue Code allowing depreciation deductions.

7. The plaintiff has failed to show that it is entitled to deductions under any section of the Revenue Act of 1938 or of the Internal Revenue Code during the fiscal years ended January 31, 1939, 1940 and 1941, on account of the value of refrigerating equipment donated to customers, and accordingly the plaintiff may not deduct the claimed amounts in computing its federal taxes for such years.

8. The plaintiff has failed to show that it is entitled to deductions under any section of the Revenue Act of 1938 or of the Internal Revenue Code during the fiscal years ended January 31, 1939 and 1940 of claimed losses on account of write-down in inventory value of refrigerating equipment held for loan or donation to customers and accordingly it may not deduct the amount of the claimed losses in computing its federal taxes for such years.

9. The Commissioner of Internal Revenue was correct in determining and assessing against the plaintiff deficiency income and declared value excess profits taxes for the years in question.

10. From the evidence and every inference properly drawn therefrom, the defendant is entitled to judgment in this action and the complaint must accordingly be dismissed at plaintiff's cost.

Judgment will be entered accordingly.